USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 4-21-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITEDHEALTHCARE OF NEW YORK, INC., ET AL.,

        Plaintiffs,

- against -

MARIA T. VULLO,

        Defendant.

17-cv-7694 (JGK)

MEMORANDUM OPINION AND ORDER

---

JOHN G. KOELTL, District Judge:

The plaintiffs – UnitedHealthcare of New York, Inc., and Oxford Health Insurance, Inc. – sued the defendant, Superintendent Maria T. Vullo, the Superintendent of Financial Services of the State of New York, to enjoin enforcement of a New York risk adjustment program entitled "Establishment and Operation of Market Stabilization Mechanisms for Certain Health Insurance Markets," (the "2017 NYRA"), 11 NYCRR 361 amend. 6. By Opinion and Order dated August 10, 2018, this Court granted the defendant's motion to dismiss and denied the plaintiffs' motions for partial summary judgment and for an injunction. UnitedHealthcare of N.Y., Inc. v. Vullo, No. 17cv7694, 2018 WL 3849842 (S.D.N.Y. Aug. 10, 2018). The plaintiffs now move under Federal Rule of Civil Procedure 62 for an injunction prohibiting enforcement of the 2017 NYRA pending appeal of this Court's decision. The plaintiffs' motion is **denied**.

I.

The plaintiffs' motions for summary judgment and an injunction concerned the interaction between two government programs that were developed to regulate the health insurance market: (1) a federal risk adjustment program ("FRAP"), authorized by the federal government as part of the Affordable Care Act and implemented by the Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS"); and (2) the 2017 NYRA, authorized by New York State and implemented by the defendant as the state's Superintendent of Financial Services. New York State had opted to have HHS implement the FRAP, but in September 2016, because the FRAP's methodology did not adequately address certain factors specific to New York, the Superintendent promulgated the 2017 NYRA to regulate New York's health insurance market in addition to the FRAP.

The plaintiffs filed this lawsuit in response, alleging that the 2017 NYRA was preempted by the Affordable Care Act and that the 2017 NYRA effected an unconstitutional taking or illegal exaction of their property. The plaintiffs then moved for summary judgment on its claims and for a permanent injunction against enforcement of the 2017 NYRA. In an August 10, 2018, memorandum opinion, this Court concluded that the plaintiffs' claims lacked merit and accordingly denied the

motions. The plaintiffs appealed that decision to the Second Circuit Court of Appeals and now seek a stay pending appeal. If the stay is not granted, and the 2017 NYRA is implemented, the plaintiffs claim that "absent extraordinary circumstances" they will have to make a payment of about $65 million to New York State. Pls.' Mem. at 6; Def.'s 56.1 Stmt. ¶ 53. The payment would be due within ten days of receiving an invoice from the Superintendent or of the plaintiffs' receipt of funds under the FRAP in October, whichever is later. 11 NYCRR § 361.9(e)(1)(ii).

## II.

There are four factors relevant to the decision whether to issue a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interests that may be affected." Hirschfeld v. Bd. of Elections in City of N.Y., 984 F.2d 35, 39 (2d Cir. 1993) (internal quotation omitted). The moving party bears the "heavy" burden of establishing that these factors weigh in its favor. See Barcia v. Sitkin, No. 79cv5831, 2004 WL 691390, at *1 (S.D.N.Y. Mar. 31, 2004). Consideration of these factors is holistic; a weak showing on one factor can be counterbalanced by a strong showing on another. See Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir.

3

2002). For example, a court may require "a lesser showing of harm if [the movant] is likely to succeed on the merits and demand a more substantial showing of harm if the likelihood of success is low." Purdue Pharma L.P. v. Endo Pharm. Inc., No. 00cv8029, 2004 WL 306591, at *1 (S.D.N.Y. Feb. 17, 2004).

### III.

The plaintiffs have failed to make the strong showing necessary to enjoin the operation of a New York State program adopted in the public interest that this Court has found to be constitutional.[1]

### A.

The first factor, irreparable injury, requires an injury "that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999) (quoting Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995)). The defendant claims that because the plaintiffs' alleged imminent harm is strictly monetary, the harm cannot be irreparable. But the plaintiffs point out that the Eleventh Amendment to the Constitution would foreclose any

---

[1] The plaintiffs summarily argue, as to the fourth factor, "[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law." Pls.' Mem. at 15 (alteration in original) (quoting K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist., 710 F.3d 99, 114 (3d Cir. 2013)). However, as discussed in the Court's August 10, 2018, decision, and reiterated in Part III.C. below, enforcement of the 2017 NYRA is not unconstitutional.

4

attempt by the plaintiffs to bring suit in federal court to recover the money paid to New York State. See United States v. New York, 708 F.2d 92, 93 (2d Cir. 1983) (per curiam). It is of no moment whether the plaintiffs could bring suit to recover the money in state court. Id. ("[I]n deciding whether a federal plaintiff has an available remedy at law that would make injunctive relief unavailable, federal courts may consider only the available federal legal remedies.").

However, the defendant points out that a potential $65 million dollar loss is a fraction of Oxford Health Insurance's anticipated 2017 total Federal Risk Adjustment receivable, which will be greater than $200 million.[2] And $65 million is but a small fraction of UnitedHealth Group's reported 2016 operating revenues, which totaled more than $184 billion.[3] That potential loss is more than offset by the harm to the small insurance market in New York State if the state program is enjoined. Similarly, it is outweighed by the fact that it is highly unlikely that the plaintiffs will succeed on appeal.

---

[2] See Dept. of Health & Human Servs., Summary Report on Permanent Risk Adjustment Transfers for the 2017 Benefit Year, at 11-36 (July 9, 2018), https://downloads.cms.gov/cciio/Summary-Report-Risk-Adjustment-2017.pdf.

[3] Sec. & Exch. Comm'n., UnitedHealth Group 2016 Form 10-K, at 32 (2017), www.unitedhealthgroup.com/~/media/5D60EEEE258F4D2FA4BA765727C41D5C.ashx.

**B.**

As to the second factor, substantial injury to other interested parties, delaying enforcement of the 2017 NYRA will substantially injure the smaller insurance companies interested in the proceeding. The Superintendent issued the 2017 NYRA precisely because the FRAP failed to address certain factors specific to New York – namely, it failed adequately to stabilize New York's small group health insurance market. See 11 NYCRR § 361.9(e). Indeed, since the FRAP was implemented, two insurance companies that operated in the small group market have left the market, in part because of the operation of the FRAP. Second Powell Decl. ¶ 41, Dkt No. 40. Delayed enforcement of the 2017 NYRA, and thus continued enforcement of the FRAP, would harm the smaller entities not adequately accounted for under the FRAP – those that the 2017 NYRA is intended to benefit. Between the 2017 NYRA's express purpose and the demonstrated harm that the FRAP has inflicted on insurance companies in the small group market, whether substantial injury will befall smaller insurance companies is not, as the plaintiffs argue, purely speculative.

**C.**

With respect to the third factor, the plaintiffs have not established a substantial possibility of success on the merits. For the reasons explained in this Court's August 10, 2018, decision, the plaintiffs have no reasonable chance of success on

6

appeal. It is noteworthy that in attempting to show a likelihood of success in the current motion, the plaintiffs have in fact included two misleading citations to the record: one in their moving brief and one in their reply brief.

Quoting parts of the 2019 final rule, 83 Fed. Reg. 16930, 16960, which allowed states participating in the FRAP to request a reduction of the federal risk adjustment amount, the plaintiffs state in their moving brief:

> Although States "do not generally need HHS approval" when "acting under their own State authority and using State resources," CMS explained, "<u>the flexibility finalized in</u> th[e 2019] <u>rule involves a reduction to the risk adjustment transfers calculated by HHS and will require HHS review as outlined above</u>."

Pls.' Mem. at 11. But, when read in full, the referenced portion of the final rule makes clear that the new regulation does not displace state programs operated under state authority, such as the current New York State program. The final rule reiterates that "States are the primary regulators of their insurance markets," and then continues:

> [W]e encourage States to examine whether any local approaches under State legal authority are warranted to help ease the transition for new participants to the health insurance markets. States that take action and make adjustments do not generally need HHS approval as these States are acting under their own State authority and using State resources. However, the flexibility finalized in this rule involves a reduction to the risk adjustment transfers calculated by HHS and will require HHS review as outlined above.

7

83 Fed. Reg. 16930, 16960. The plaintiffs misleadingly elide language referring to two independent propositions: that states have the authority to implement <u>state</u> risk adjustment programs, and that HHS review is required when a state participating in the FRAP requests a reduction to the <u>federal</u> risk adjustment. The full and correct language of the regulation and its context was correctly set out in this Court's original opinion. <u>UnitedHealthcare</u>, 2018 WL 3849842 at *9-10.

The plaintiffs repeat their misleading conflation in their reply brief. Again quoting the 2019 final rule, <u>id.</u>, the plaintiffs state:

> HHS explained that, although "States that take such actions and make adjustments do not generally need HHS approval," changes that "involve[] a reduction to the risk adjustment transfers calculated by HHS" are specifically addressed by regulation and "require HHS review."

Pls.' Reply Mem. at 6. The first clause of the quote refers to state-implemented programs, and the second refers to the FRAP. There is, in short, nothing in the plaintiffs' papers that suggests a reasonable possibility of success on appeal.

**D.**

Finally, the plaintiffs' argument as to the fourth factor, the public interest, is without merit. The plaintiffs claim that, at most, granting their requested injunction would modestly delay enforcement of the 2017 NYRA should the defendant

8

succeed on appeal. The plaintiffs imply that no harm other than mere delay would result. But this rationale ignores the impact that delayed enforcement would have on the smaller entities that the Superintendent determined were harmed by the FRAP. These entities – the ones that the 2017 NYRA is intended to benefit – would continue to be harmed by the FRAP's methodology while not accruing the benefits accorded to them by the 2017 NYRA. The plaintiffs' argument also ignores the Superintendent's determination that continued enforcement of the FRAP "will adversely impact the small group health insurance market in [New York] in 2017." See 11 NYCRR § 361.9(b)(1).

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the plaintiffs have failed to meet their heavy burden of establishing that a stay is warranted. The plaintiffs' motion for a stay prohibiting enforcement of the 2017 NYRA pending appeal of this Court's August 13, 2018, judgment is therefore

**denied.** The Clerk of the Court is directed to close Docket number 70.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 21, 2018**

_____
John G. Koeltl
United States District Judge